[Cite as *State v. Eames*, 2025-Ohio-2617.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. {48}L-24-1189

    Appellee                              Trial Court No. CR0202301009

v.

Don Eames                                        **DECISION AND JUDGMENT**

    Appellant                             Decided: July 25, 2025

* * * * *

Lawrence A. Gold, Esq., for appellant.

Julia R. Bates, Esq., Prosecuting Attorney and
Evy M. Jarrett, Esq., Assistant Prosecutor, for appellee.

* * * * *

**ZMUDA, J.**

## I. Introduction

**{¶ 1}** In this appeal, appellant, Don Eames, challenges the judgment of the Lucas County Court of Common Pleas, denying his motion to merge the sentences for involuntary manslaughter and kidnapping, with the trial court ultimately imposing an aggregate prison sentence of 16 to 18.5 years. Finding no error, we affirm.

## II. Facts and Procedural History

{¶ 3} The facts in this case were previously addressed in *State v. Eames,* 2025-Ohio-2177 (6th Dist.), the appeal of appellant's sister and co-defendant, Carissa. In that case, we summarized the case as follows:

> This case arises from the December 3, 2022 murder of victims K.W. and K.P., both juvenile males. On December 3, 2022, while K.W. and K.P. were playing video games in the basement of appellant's Toledo home, they were assaulted, tied up with electrical cords, put into the trunk of a motor vehicle, taken to an abandoned home in North Toledo, and killed, after which the home was burned down, in a failed effort to conceal the above-described crimes.

*See State v. Eames,* 2025-Ohio-21277, ¶ 2 (6th Dist.). Carissa entered a negotiated guilty plea, admitting to complicity in counts of felonious assault and kidnaping as to each victim. *See Eames* at ¶ 1-5.

{¶ 4} Appellant participated in confronting the victims at the Maumee Street home of his sister and her boyfriend, co-defendant Corbin Gingrich. Appellant believed the boys stole a gun from Gingrich, and after one of the boys took out a gun, appellant tackled him and took part in beating and subduing the boys, before restraining them with electrical cords. Gingrich then contacted co-defendant Cruz Garcia to take the boys from the home, and Garcia arrived with two other men, all wearing face masks, and drove the victims away in the trunk of Garcia's vehicle. At some point a photo was taken of the victims, bound at the arms and legs, and the victims were killed at an unknown location before their bodies were placed in a vacant home in North Toledo. The home was fire-

2.

bombed to conceal the crimes. After an anonymous tip, authorities found the victim's bodies a week and a half later.

{¶ 5} As a result of his participation in the crimes, appellant was initially charged with two counts of murder in violation of R.C. 2903.02(B) and 2929.02, felonies of the first degree, and two counts of kidnapping in violation of R.C. 2905.01(A)(3) and (C)(2), felonies of the first degree. After plea negotiations, appellant was charged by information with tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree, and obstructing justice in violation of R.C. 2921.32(A)(5) and (C)(4), a felony the third degree. Additionally, the state amended his murder charges to two counts of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), each a felony of the first degree.

{¶ 6} On June 10, 2024, appellant entered a guilty plea to two counts of involuntary manslaughter as a lesser included offense to the two murder counts, two counts of kidnapping, one count of tampering with evidence, and one count of obstructing justice. In return for his plea, the state agreed to remain silent at sentencing, with no recommendation as to a sentence.

{¶ 7} At sentencing, appellant's trial counsel argued that each count of involuntary manslaughter should merge with the corresponding kidnapping charge, asserting the indictment included kidnapping as an element of murder, as originally charged. The state opposed merger, noting appellant entered his guilty plea to involuntary manslaughter, which merely required an underlying felony offense, and "not specifically kidnapping."

3.

Additionally, the state argued that the facts demonstrated separate animus, and the victims sustained separate injuries based on the two offenses.

{¶ 8} The trial court found the counts of involuntary manslaughter did not merge with the counts of kidnapping, stating:

> I believe that this started out – I mean, there's so many different stories, but I certainly heard all the testimony during a trial and heard testimony about Mr. Eames' part in that, and if you take it all together, the kidnapping is certainly – there's almost – I'll call it – I'm going to call it two kidnappings in this case.
> These young men were kidnapped at this Maumee Street. They were kept. They were hurt. They were tackled. They were hit. They were everything. They were probably more scared than anybody I can imagine. They were tied up with HMDI cords, both their hands and their legs. Then, again, given over to two people who continued that kidnapping in the trunk of a car.
> If the testimony is to be believed, changed, took the cords off, and then had tape around them and then were killed, and I don't – I don't care what anybody says, everybody knew what was going to happen when those youths were given over to those two so I'm going to find these do not merge in this case.

After noting appellant had the worst criminal record of all the defendants in the case, and that testimony placed appellant "in the thick of" events leading to the death of the victims, the trial court was unmoved by appellant's "wrong place, wrong time" claim. The trial court found appellant took part in handing two kids over to their killers and, but for the anonymous tip, appellant's lies would have prevented the parents of the victims from learning their child's fate.

{¶ 9} The trial court addressed the statutory findings under R.C. 2929.13, found appellant not amenable to community control, and imposed sentence as follows:

4.

(1) Involuntary manslaughter of K.W. in violation of R.C. 2903.04(A) and (C), a felony of the first degree, 5 to 7.5 years;

(2) Involuntary manslaughter of K.P. in violation of R.C. 2903.04(A) and (C), a felony of the first degree, 5 to 7.5 years;

(3) Kidnapping of K.W. in violation of R.C. 2905.01(A)(3) and (C), a felony of the first degree, 3 to 4.5 years;

(4) Kidnapping of K.P. in violation of R.C. 2905.01(A)(3) and (C), a felony of the first degree, 3 to 4.5 years;

(5) Tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree, 24 months; and

(6) Obstructing justice in violation of R.C. 2921.32(A)(5), (C)(1), and (C)(4), a felony of the third degree, 24 months.

The trial court determined that no counts merged, finding "the kidnapping is wholly separate and apart from the final deaths of these two victims." The trial court ordered the sentences for tampering and obstruction to run concurrent with each other and concurrent with the other charges but ordered the sentences for the two counts of involuntary manslaughter and two counts of kidnapping to all run consecutively, for a total prison term of 16 to 18.5 years.

{¶ 10} Appellant filed a timely notice of appeal from this judgment.

### III. Assignment of Error

{¶ 11} Appellant asserts a single assignment of error on appeal, as follows:

The trial court erred by denying Appellant's motion to merge Count 3 with Count 5, and Count 4 and Count 6, Involuntary Manslaughter and Kidnapping, as allied offenses of similar import.

5.

## IV. Analysis

{¶ 12} In his sole assignment of error, appellant argues the trial court should have merged the involuntary manslaughter charges with the kidnapping charges, claiming separately sentencing him as to each charge violated R.C. 2941.25 as well as the Fifth Amendment to the United States Constitution's prohibition on subjecting a person to punishment twice for the same offense, or double jeopardy.

{¶ 13} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, which prohibit multiple punishments for the same offense." *State v. Turvey,* 2023-Ohio-2248, ¶ 107 (6th Dist.), quoting *State v. Rogers,* 2022-Ohio-4126, ¶ 16 (6th Dist.). R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 14} "The defendant bears the burden of establishing that R.C. 2941.25 prohibits multiple punishments." *State v. Kretzer,* 2024-Ohio-2494, ¶ 14 (6th Dist.), citing

6.

*State v. Smith*, 2023-Ohio-866, ¶ 10 (6th Dist.), citing *State v. Washington*, 2013-Ohio-4982, ¶ 18. We review the trial court's determination regarding merger de novo. *Turvey* at ¶ 109, citing *Smith* at ¶ 10 (additional citation omitted.).

{¶ 15} In considering a motion to merge allied offenses into a single conviction, courts must address the defendant's conduct, or how the offenses were committed. *Kretzer* at ¶ 13, citing *State v. Tellis,* 2020-Ohio-6982, ¶ 74 (6th Dist.), citing *State v. Ruff,* 2015-Ohio-995, ¶ 25. The test for merger under R.C. 2941.25 requires three questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Bailey,* 2022-Ohio-4407, ¶ 10, quoting *State v. Earley,* 2015-Ohio-4615, ¶ 12, quoting *Ruff* at ¶ 31.

{¶ 16} In this case, appellant argues that his conduct relative to involuntary manslaughter and kidnapping was "part of a continuing course of conduct and not committed separately." Appellant further argues that kidnapping served as the underlying offense or was an element of involuntary manslaughter, and both offenses are felonies of the first degree. However, while claiming he was not present at the deaths, appellant also acknowledged his complicity in causing the victims' death and his guilty plea served as an admission to the facts underlying each offense.

{¶ 17} An offense is committed separately if one offense is complete before the second offense occurs. *State v. Fisher,* 2023-Ohio-2088, ¶ 21 (6th Dist.). Appellant argues

7.

a continuing course of conduct rather than separately committed offenses, but the facts noted by the trial court include restraint and a beating, followed by movement, followed by a second restraint and beating, and culminating in delivery of the victims to their masked killers. "[W]hen "the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." *State v. Grate,* 2020-Ohio-5584, ¶ 107, citing *State v. Logan,* 60 Ohio St.2d 126, 130 (1979).

{¶ 18} Additionally, we previously addressed merger of kidnapping with another offense, with the primary question concerning the nature of the kidnapping offense, or "whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *State v. Sproles,* 2023-Ohio-3403, ¶ 49 (6th Dist.), quoting *Logan,* at 135; *State v. Dean,* 2018-Ohio-1740, ¶ 66 (6th Dist.). We have found kidnapping did not merge with rape where there was "separate and identifiable harm related solely to the kidnapping count" based on the fear of dying experienced by the victim relative to the kidnapping, separate from the harm related to the subsequent rape. *State v. McKinney,* 2020-Ohio-3547, ¶ 30-31 (6th Dist.).

{¶ 19} Here, the facts demonstrate both a prolonged confinement and movement, followed by a subsequent confinement, and separate and identifiable harm attributable to kidnapping and involuntary manslaughter. As the trial court noted, the victims were

8.

bound and assaulted in the basement, then moved to a vehicle's trunk, bound again and transported to the vacant home where they would later be found, deceased. Considering these facts, we agree with the trial court's finding that the kidnapping and involuntary manslaughter offenses were not subject to merger under R.C. 2941.25. Appellant's sole assignment of error, therefore, is not well-taken.

## V. Conclusion

{¶ 20} Having found substantial just to be done, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also,* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Gene A. Zmuda, J. | [[Applied Signature]] |
| | JUDGE |
| Myron C. Duhart, J. | [[Applied Signature 2]] |
| | JUDGE |
| Charles E. Sulek, P.J. | [[Applied Signature 3]] |
| CONCUR | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.